996 P.2d 806

In re SRBA Case No. 39576, Minidoka
National Wildlife Refuge, SRBA
Subcase No. 36–15452.

STATE of Idaho, Appellant,

v.

UNITED STATES of America,
Respondent.

In re SRBA Case No. 39576, Minidoka
National Wildlife Refuge, SRBA
Subcase No. 36–15452.

Twin Falls Canal Company and North
Side Canal Company; Harrison Canal
& Irrigation Company, Egin Bench Ca-
nal Inc., Progressive Irrigation District,
New Sweden Irrigation District, Enter-
prise Irrigation District, North Fremont
Canal Systems, Burgess Canal & Irri-
gation Company, Snake River Valley
Irrigation District, Peoples Canal & Ir-
rigation Company and Idaho Irrigation
District; A & B Irrigation District and
Burley Irrigation District, Appellants,

v.

United States of America, Respondent.

Nos. 24473, 24474.

Supreme Court of Idaho,
Twin Falls, March 1999 Term.

March 9, 2000.

Hon. Alan G. Lance, Attorney General, Boise, for appellant State of Idaho. Peter J. Ampe argued.

Rosholt, Robertson & Tucker, Twin Falls, for appellants Twin Falls Canal Company and North Side Canal Company. Norman M. Semanko argued. Rigby, Thatcher, Andrus, Rigby, Kam & Moeller, Chtd., Rexburg, for appellants Harrison Canal & Irrigation Company, Egin Bench Canal Inc., Progressive Irrigation District, New Sweden Irrigation District, Enterprise Irrigation District, North Fremont Canal Systems, Burgess Canal & Irrigation Company, Snake River Valley Irrigation District, Peoples Canal & Irrigation Company, and Idaho Irrigation District. Did not participate in oral argument.

Ling, Nielsen & Robinson, Rupert, for appellants A & B Irrigation District and Burley Irrigation District. Roger D. Ling argued.

Betty H. Richardson, United States Attorney, Boise; Sean H. Donahue, U.S. Department of Justice, Washington, D.C.; James Dubois, U.S. Department of Justice, Denver; for respondent. Sean H. Donahue argued.

**108**

KIDWELL, Justice.

This Court granted permissive appeal from an interlocutory order of the Snake River Basin Adjudication (SRBA) district court. The SRBA court denied the motion of certain irrigation districts and canal companies to file a late response and granted in part their motion to participate in the subcase. We affirm. The SRBA court also held that diversion was not required to perfect the water right the United States claimed under Idaho's constitutional method of appropriation. We reverse, holding that the United States may not utilize Idaho's constitutional method of appropriation to claim a non-diversionary water right for purposes other than stock watering.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Water from Smith Springs and its associated seeps (Smith Springs) flows from the banks of the Snake River into a bay of Lake Walcott Reservoir above Minidoka Dam in Blaine County. Smith Springs are within the boundaries of Minidoka National Wildlife Refuge (Minidoka NWR). Minidoka NWR, originally the "Minidoka Reservation for Protection of Native Birds," was established by Executive Order of President Theodore Roosevelt in February 1909. The Executive Order expressly anticipated a reservoir site and specified that the reservation was set apart as a "preserve[ ] and breeding ground[ ] for native birds." The land comprising the reservoir site and Minidoka NWR was condemned for use of the United States on May 17, 1915.

In the SRBA, the United States filed a claim, No. 36–15452, for 1.16 cubic feet per second (c.f.s.), based on the constitutional method of appropriation, for the waters from Smith Springs.[1] The United States claimed the appropriation for the non-consumptive beneficial use of wildlife from January 1 until December 31 of each year, with a priority date of May 17, 1915. The claim observed that Smith Springs provided a source of fresh water to the bay, maintained wetlands

when the reservoir was drawn down, and kept areas of the bay open during winter, thereby providing important habitat for overwintering birds. The United States acknowledged that there were "[n]o developed diversion works" at Smith Springs.

The Idaho Department of Water Resources (IDWR) Director's Report for Basin 36, filed in November 1992, recommended that the United States' claim be disallowed on the basis that a valid appropriation required a physical diversion.

Within required deadlines, the United States filed an objection and IDWR filed a response to the objection. The claim was designated a subcase and assigned to a special master. After IDWR, originally a party, was removed as a party to the SRBA pursuant to I.C. § 42–1401B(3), the SRBA court extended the response deadline by almost two years, but no other party filed a response. The United States, the only remaining party in the subcase after IDWR's removal, filed a motion for summary judgment on December 7, 1995.

On January 11, 1996, Twin Falls Canal Company, North Side Canal Company, A & B Irrigation District, and Burley Irrigation District (the Irrigators) filed a joint motion for leave to file a late response, or, in the alternative, to participate in the subcase. The special master denied the Irrigators' motion to file a late response. The special master granted permissive intervention but limited the Irrigators' participation to amicus curiae addressing the question of what constitutes a diversion for a beneficial use claim.

The special master recommended granting summary judgment for the United States on February 20, 1996. On March 11, 1996, the special master recommended that the United States be adjudicated a constitutional appropriation for an instream water right with a priority date of May 17, 1915 for 1.16 c.f.s. from Smith Springs for the beneficial use of wildlife. The State and the Irrigators filed notices of challenge contesting the special master's recommendations.

---

1. The United States did not claim a federal re-

served right in the waters of Smith Springs.

After hearings, the SRBA court issued its order on October 10, 1997. It affirmed the decision of the special master regarding the Irrigators' motion to file a late response and alternative motion to participate. The SRBA court also affirmed the special master's decision that a diversion was not required for an appropriation under the constitutional method. However, the SRBA court held that the special master erred in deciding a one-party subcase on summary judgment. It remanded to the special master for findings on the specific amount of water subject to a water right, intent to appropriate, and priority date. The SRBA court also allowed the State and the Irrigators to participate on issues of both fact and law on remand.

The State and Irrigators filed timely notices of intent to participate in the hearings on remand. Ten other irrigators also filed timely notices to participate.

On October 24, 1997, the State and the Irrigators filed a joint motion for permission to appeal the legal questions presented by this case. The SRBA court granted the motion on October 31. This Court granted permission to appeal on January 20, 1998. The State and Irrigators thereafter filed timely notices of appeal.

## II.

## ANALYSIS

**A. The Denial of the Irrigators' Motion to File a Late Response or Participate in the Subcase as a Matter of Right Was Proper.**

The Irrigators contest the SRBA court's affirmance of the special master's decision regarding their joint motion to file a late response and alternative motion to participate. They assert that their late response was justified because they had good cause for delay. In the alternative, the Irrigators maintain that they met the requirements for intervention of right under I.R.C.P. 24(a) because their motion was timely and they claimed interests that could be impaired by the resolution of the subcase. They also assert that the special master erred in limiting their participation under the permissive intervention standard of I.R.C.P. 24(b).

A party may intervene in an SRBA subcase when it acts "in accordance with rules of practice and procedure established by the district court." I.C. § 42–1412(2). Procedural aspects of SRBA litigation are governed by the Idaho Rules of Civil Procedure, supplemented by SRBA Administrative Order # 1 (A.O.1). A.O.1 § 1. We review a district court's decision on the timeliness of a motion to intervene under an abuse of discretion standard. *Cf. NAACP v. New York*, 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648, 662–63 (1973) (interpreting identical federal rule governing intervention). Timeliness of intervention is determined from all the circumstances: the point to which the suit has progressed is not solely dispositive. *Id.* at 366, 93 S.Ct. at 2603, 37 L.Ed.2d at 662.

### 1. Motion to file a late response.

IDWR Director's Reports furnish the dates when objections and responses to the Director's Reports are due. A.O.1 § 4b; I.C. § 42–1412(2). Filing a response to a Director's Report allows a party to the SRBA adjudication to become a party to the subcase. A.O.1 § 4; I.C. § 42–1412(2).

A.O.1 § 4b provides an *absolute* rule for responses: "The objection or response must be *received* by the court by the deadline specified." (Emphasis in original.) Here the Irrigators did not file a response by either the initial deadline of September 1993 or the extended deadline of August 1995. By the plain language of the SRBA rules, the Irrigators' response was untimely and the special master correctly denied the motion to file the response. Therefore, the SRBA court did not abuse its discretion in affirming the denial.

### 2. Alternative motion to participate.

In the alternative, the Irrigators moved to participate in the subcase. A.O.1 § 6g provides:

> Any party to the adjudication who is not a party to a subcase may, by timely motion, seek leave to participate in a subcase. The motion shall be titled "Motion to Partici-

pate." A motion to participate shall be treated like a motion to intervene (I.R.C.P. 24) and shall be decided by the Presiding Judge or the assigned special master.

Parties to the SRBA adjudication may intervene in a subcase as a matter of right if they meet the criteria of I.R.C.P. 24(a):

Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

I.R.C.P. 24(a).

The special master held that the Irrigators did not meet the criteria for intervention of right because they made no showing that disposition of the United States' claim might impair their ability to protect their interests. The SRBA court affirmed, concluding that the generalized interest the Irrigators had in the subcase was insufficient to support intervention of right. It held that their motion was untimely, reasoning that to hold otherwise would render meaningless the time frames given in A.O.1 § 4b for objections and responses.

We find no abuse of discretion in the SRBA court's decision. A.O.1 § 6g allows responses by "any party to the adjudication," which enables a party with a generalized interest in questions of law to become a party to a subcase. A motion to participate is an alternative method to filing a response with no specific timetable. As an alternative, it *supplements* the usual SRBA procedure of filing responses provided by I.C. § 42–1412(2) and A.O.1 § 4b. The SRBA court indicated that any motion to participate would be timely for purposes of I.R.C.P. 24(a) if filed within the response period. However, it stated that, in the interest of judicial efficiency, motions to participate after a filing for summary judgment would be considered timely only in extraordinary circumstances.

The Irrigators argue that any motion to participate before trial is timely, citing *Duff v. Draper*, 96 Idaho 299, 527 P.2d 1257 (1974). *Duff* set a generous standard for the timeliness of intervention by a bankrupt person intervening in an action by the trustee in bankruptcy. *Id.* at 301–02, 527 P.2d at 1259–60. *Duff*'s timeliness holding does not apply in the context of the SRBA litigation, where there is a standard mechanism—the response—for parties to join a subcase. Given the monumental scope of the SRBA, which is adjudicating the rights of all water rights holders in the Snake River Basin, we agree with the SRBA court that a "generalized interest is insufficient to intervene in a subcase as a matter of right because the requirements for filing timely objections or responses under I.C. § 42–1412 would become meaningless[,] depriving the court and all parties to the SRBA the structure necessary to administer this case." In the context of the SRBA litigation, we hold the SRBA court did not abuse its discretion in holding that the Irrigators' motion to participate was untimely.

■ The SRBA court affirmed the special master's decision on the Irrigators' motion to participate, noting that the special master allowed limited participation by the Irrigators that was not challenged by the United States. Under the I.R.C.P. 24(b) standard for permissive intervention, the special master allowed the Irrigators to participate as amicus curiae on an issue first brought up in the United States' motion for summary judgment—whether the United States' manipulation of water levels in Lake Walcott Reservoir constituted a diversion under Idaho law.

■ I.R.C.P. 24(b) allows permissive intervention by a person "[u]pon timely application" and "when an applicant's claim ... and the main action have a question of law or fact in common." The decision of whether to grant the motion to intervene is discretionary with the trial court. A court acts within its discretion if it perceives the issue as discretionary, acts within the outer boundaries of its discretion and consistently with applicable legal standards, and reaches its decision by an exercise of reason. *See Sun Valley Shopping Ctr., Inc. v. Idaho Power*

*Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). The special master concluded that the Irrigators' motion to participate was untimely as to the issue of whether physical diversion was required, because that issue was raised in the United States' original claim. However, he held that the Irrigators' motion to participate was timely as to the question of whether manipulation of water levels in Lake Walcott Reservoir constituted diversion, an issue first raised in the United States' motion for summary judgment. To minimize delay, the special master limited the Irrigators' participation to amicus curi on this issue. In considering the factors of delay and timeliness of intervention as to different issues, the special master reasoned to a conclusion within the bounds of his discretion. We find no abuse of discretion in the decision allowing limited participation by the Irrigators.

Therefore, we affirm the SRBA court's action in denying the motion to file a late response and granting in part the motion to participate.

**B. The United States May Not Claim an Instream Water Right for a Purpose Other Than Stock Watering Under Idaho's Constitutional Method of Appropriation.**

■ Before us is the narrow question of whether the United States may utilize Idaho's constitutional method of appropriation to claim a non-diversionary water right for purposes other than stock watering. This presents a question of law, over which we exercise free review. *See Fremont-Madison Irrigation Dist. and Mitigation Group v. Idaho Ground Water Appropriators, Inc.,* 129 Idaho 454, 457, 926 P.2d 1301, 1304 (1996).

■ Until 1971, appropriations of water in Idaho could be made two ways. *Parke v. Bell,* 97 Idaho 67, 69, 539 P.2d 995, 997 (1975). One method, "the statutory method," required applying for a permit under provisions of Title 42 of the Idaho Code. *See, e.g., Lemmon v. Hardy,* 95 Idaho 778, 778, 519 P.2d 1168, 1168 (1974); *Nielson v. Parker,* 19 Idaho 727, 729–30, 115 P. 488, 488–89 (1911). Under the other method, usually referred to as the "constitutional method of appropria-

tion," a water user could make a valid appropriation without a permit, most commonly by diverting the water and putting it to beneficial use. *See, e.g., Olson v. Bedke,* 97 Idaho 825, 829–30, 555 P.2d 156, 160–61 (1976); *Sand Point Water and Light Co. v. Panhandle Dev. Co.,* 11 Idaho 405, 413, 83 P. 347, 349 (1905). A "constitutional appropriation" is an appropriation made under this latter method. *See Parke v. Bell,* 97 Idaho at 69, 539 P.2d at 997. It should be noted that a "constitutional appropriation" is not pursuant to specific procedures specified by the constitution, but instead is allowed by the grant of authority of the constitutional language. Although new appropriations could not be made under the constitutional method after 1971, I.C. § 42–201, the validity of existing constitutional appropriations continues to be recognized. *See, e.g., Parke v. Bell,* 97 Idaho at 69, 539 P.2d at 997; *R.T. Nahas Co. v. Hulet,* 106 Idaho 37, 44, 674 P.2d 1036, 1043 (Ct.App.1983). Here the United States claims that, as of 1915, it appropriated the waters of Smith Springs under the constitutional method of appropriation simply by putting them to beneficial use without constructing any diversion device.

■ Idaho water law generally requires an actual diversion and beneficial use for the existence of a valid water right. *See, e.g., Hidden Springs Trout Ranch, Inc. v. Hagerman Water Users, Inc.,* 101 Idaho 677, 679, 619 P.2d 1130, 1132 (1980); *Olson v. Bedke,* 97 Idaho at 829–30, 555 P.2d at 160–61; *Maher v. Gentry,* 67 Idaho 559, 566, 186 P.2d 870, 875 (1947); *Nielson v. Parker,* 19 Idaho at 731, 115 P. at 489. Only two exceptions to the diversion requirement exist. No diversion from a natural watercourse or diversion device is needed to establish a valid appropriative water right for stock watering. *R.T. Nahas Co.,* 106 Idaho at 45, 674 P.2d at 1044; *Stevenson v. Steele,* 93 Idaho 4, 11, 453 P.2d 819, 826 (1969). In addition, State entities acting pursuant to statute may make non-diversionary appropriations for the beneficial use of Idaho citizens. *State, Dep't of Parks v. Idaho Dep't of Water Admin.,* 96 Idaho 440, 444, 530 P.2d 924, 928 (1974); I.C. §§ 42–1501 to –1505.

■ Neither of these exceptions covers the United States' claim. Although the stock-watering exception applies to appropriations made under the constitutional method, it applies only to watering livestock and does not extend to beneficial use for wildlife habitat. *See R.T. Nahas Co.*, 106 Idaho at 45, 674 P.2d at 1044. This limited exception to the diversion requirement is also recognized in other appropriation doctrine states. *See, e.g., Town of Genoa v. Westfall*, 141 Colo. 533, 349 P.2d 370, 378 (1960); *Steptoe Live Stock Co. v. Gulley*, 53 Nev. 163, 295 P. 772, 775 (1931). *But cf. Adams v. Portage Irrigation, Reservoir & Power Co.*, 72 P.2d 648, 653–54 (Utah 1937) (holding that sheep herders had valid use right, but no appropriative right, to water sheep instream).

■ The limited public purpose exception stated in *State, Department of Parks* does not support the United States' claim because it applies only to appropriations made under Idaho's permit system. In *State, Department of Parks*, this Court held Idaho's constitution did not require actual physical diversion to establish a valid water right. *State, Dep't of Parks*, 96 Idaho at 444, 530 P.2d at 928. In so doing, the Court upheld a 1971 statute authorizing the state park board to appropriate in trust for the people of Idaho the unappropriated natural spring flow in Malad Canyon for scenic beauty and recreational purposes. *Id.* at 445, 530 P.2d at 929 (discussing I.C. § 67–4307). While the statute did not expressly waive the diversion requirement, this Court "deem[ed] it clear that the legislature intended no physical diversion of water be required in the appropriation of the subject waters." *State, Dep't of Parks*, 96 Idaho at 445, 530 P.2d at 929. *Compare* I.C. § 67–4301 (1925 statute authorizing governor to appropriate in trust the unappropriated waters of Big Payette Lake for scenic beauty, health, and recreation and providing that "no proof ... of diversion shall be required") *and* I.C. § 67–4304 (1927 statute authorizing similar measure for the unappropriated waters of Priest, Pend Oreille, and Coeur d'Alene Lakes). In all these cases, however, appropriations were subject to the permit requirements of Title 42. *See* I.C. § 67–4307 ("No fee shall be required in connection with said appropriation ... or the permit issued in connection therewith, but license shall issue at any time upon proof of beneficial use. . . . The park and recreation board ... shall be deemed to be the holder of such permit."); I.C. § 67–4301 ("No fee shall be required in connection with said appropriation by the governor or the permit issued in connection therewith, and no proof of completion of any works of diversion shall be required, but license shall issue at any time upon proof of beneficial use. . . . Each succeeding governor in office shall be deemed to be a holder of such permit, in trust for the people of the state."); I.C. § 67–4304 (same). The United States has not requested, pursuant to I.C. § 42–1504, that the Idaho Water Resource Board file an application for appropriating a minimum streamflow for Smith Springs. Therefore, the limited public purpose exception does not apply to its claim.

## III.

## CONCLUSION

The SRBA court did not abuse its discretion in denying the Irrigators' motion to file a late response and granting in part the Irrigators' motion to participate in the subcase. The United States may not utilize Idaho's constitutional method of appropriation to claim a non-diversionary water right for purposes other than stock watering. Therefore, the order of the SRBA court is affirmed in part and reversed in part. We remand for further proceedings consistent with this opinion. No costs or attorney fees are awarded on appeal.

Chief Justice TROUT, Justices SILAK, SCHROEDER, and WALTERS, concur.